UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

PEDRO RIVERA, et al.,

Plaintiffs & Counterdefendants,

v.

MARICELA VALLEJO DE SANCHEZ,

Defendant & Counterclaimant.

No. CV 24-11218 PA (CTSx)

FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiffs Pedro Rivera, Cintas Acuario, Inc., and Ayana Musical, Inc. ("Plaintiffs") commenced this action on December 30, 2024. Plaintiffs' Complaint alleges a claim for declaratory relief, and names as defendant Maricela Vallejo de Sanchez ("Defendant"). The case involves a dispute over the grants of copyright interests in sound recordings by Rosalino "Chalino" Sanchez ("Chalino" or "Sanchez"), Defendant's former husband, who passed away in 1992. In 1976, Congress enacted a statutory regime that gave authors and their heirs the right to terminate previously made grants of copyright under certain circumstances, and thereby recapture some of the value associated with the authors' works. See 17 U.S.C. §§ 203, 304(c); H.R. Rep. No. 94-1476, at 124 . Defendant is Sanchez's heir, and since 2019, she has attempted to terminate rights in certain of Chalino's sound recordings held by Plaintiffs.

In this action, Plaintiffs seek a judicial declaration under the Declaratory Judgment Act, 28 U.S.C. § 2201, as to the enforceability of certain copyright termination notices served on Plaintiffs by Defendant, pursuant to 17 U.S.C. § 203. Defendant filed a Counterclaim against Plaintiffs on February 20, 2025, also alleging a claim for declaratory relief that seeks a judicial declaration regarding the enforceability of these same termination notices.[1/]

The Court conducted a bench trial in this matter on March 10, 2026. Consistent with the Court's procedures, the parties then filed their respective proposed Findings of Fact and Conclusions of Law, and their objections to each other's proposed Findings of Fact and Conclusions of Law.

The Court now makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a). Any finding of fact that constitutes a conclusion of law is hereby adopted as a conclusion of law, and any conclusion of law that constitutes a finding of fact is hereby adopted as a finding of fact.

I. Findings of Fact

1. Plaintiff Rivera is a Latin music producer. (Rivera Decl. ¶ 3.)

2. Plaintiff Rivera is the owner of Plaintiff Cintas Acuario or Cintas, a Latin music record label that was incorporated on December 14, 1994. (Id.)

3. Plaintiff Rivera has been operating his music business under the business name "Cintas Acuario" or "Cintas" since 1966. (Rivera Decl. ¶ 2.)

4. Chalino was a popular singer and songwriter of Mexican "corridos" or ballads. (Rivera Decl. ¶ 4; Sanchez Decl. ¶ 13.)

---

[1/] At trial, the Court struck the portion of Defendant's Counterclaim seeking an accounting, unjust enrichment and restitution profits. (Docket No. 111.) Defendant's Counterclaim also alleges a separate claim for injunctive relief. Injunctive relief, however, is a remedy and not a stand-alone cause of action. See Mehta v. Wells Fargo Bank, N.A., 737 F. Supp. 2d 1185, 1205 (S.D. Cal. 2010) ("Injunctive relief, like damages, is a remedy requested by the parties, not a separate cause of action.") (citation omitted). The Court addresses the issue as to whether Defendant is entitled to the remedy of injunctive relief below, in its Conclusions of Law.

5. Chalino was murdered on May 16, 1992. (Rivera Decl. ¶ 14.)

6. Defendant is Chalino's widow. She married Chalino in Los Angeles, California on October 15, 1983. (Sanchez Decl. ¶ 5; Trial Exh. 262.)

7. Defendant is Chalino's heir. (Sanchez Decl. ¶ 3; Trial Exh. 261.)

8. On August 15, 1989, Plaintiff Rivera and Chalino signed a document ("1989 Agreement") that identified the following fifteen sound recordings: (1) "Raymundo Chaidez"; (2) "Manuel Olazabal"; (3) "Corrido Del Monano"; (4) "Lucio Villareal"; (5) "Chuy Luna"; (6) "Silvestre Murillo"; (7) "Jose Heredia"; (8) "La Fuga De Salome"; (9) "Candido Rodriguez"; (10) "La Venganza Del Serapio"; (11) "El Corrido Del Quitillo"; (12) "Tomas Campos"; (13) "Dinastia De Los Ochoa"; (14) "Homenaje Del Polle"; and (15) "Inez Calderon" ("1989 Agreement Works"). (Trial Exh. 3; Rivera Decl. ¶¶ 5–6.)

9. The 1989 Agreement stated that those fifteen sound recordings were the "property of Cintas Acuario;" "sold for $6,000;" and "with Mr. Pedro Rivera having to pay rights for performance." (Id.)

10. Thirteen of the fifteen sound recordings acquired pursuant to the 1989 Agreement were part of the album *Thirteen Mejores Exitos* which is comprised of the first thirteen sound recordings listed in paragraph 8. (Trial Exh. 102.)

11. The other two sound recordings,"Homenaje Del Polle" and "Inez Calderon," were not released by Plaintiff Rivera, and are not at issue in this case because the rights belong to a third party, Musart. (Rivera Decl. ¶ 6; Sanchez Decl. ¶ 22; Trial Exhs. 241, 243, 260.)

12. On May 7, 1992, plaintiff Rivera and Chalino signed a document entitled "Authorization" ("1992 Agreement"). (Trial Exh. 4; Rivera Decl. ¶ 7.)

13. The 1992 Agreement authorized "Pedro Rivera from 'Cintas Acuario' to commercially use all the recording materials . . . with the name of Chalino Sanchez," and stated that "we agree that Mr. Pedro Rivera will start paying copyright royalties, not for performance . . . to other recording label other than Cintas Acuario." (Trial Exh. 4.)

14. The album, *El Gallo De Sinaloa*, contains the following sound recordings: (1) "El Gallo De Sinaloa"; (2) "Don Arturo Garcia"; (3) "Flor Margarita"; (4) "Juan Samaniego"; (5) "Noches Tenebrosas"; (6) "Don Jose Castro"; (7) "Vestido, Anillo Y Corona"; (8) "Paloma Envenenada"; (9) "Contrabando De La Frontera"; (10) "Amador Garcia"; (11) "Lucas Leon"; (12) "Regulo Sanchez"; (13) "Loreto Mendoza"; (14) "Clavel de Primavera"; and (15) "Luis Aguirre". (Rivera Decl. ¶ 8.)

15. The album, *Corridos Villistas*, contains the following master sound recordings: (1) "Corrido Villista"; (2) "El General Y El Sargento"; (3) "Descansa General"; (4) "Caballos De Pancho Villa"; (5) "80 Cargas Suicidas"; (6) "Desilución"; (7) "La Tumba De Villa"; (8) "Donde Lloro El General"; (9) "La Discusión Fue Una Yegua"; (10) "El Mayor De Los Dorados"; (11) "El Cabo Sauceda"; (12) "Fierro Bazan"; (13) "Salvador Lopez"; (14) "Mi General Zapata"; and (15) "Ramona Pineda". (Id.)

16. The album, *En Vivo Desde El Farallon*, contains the following sound recordings: (1) "Adios Madre Querida"; (2) "Vengo A Ver Unos Ojos"; (3) "El Toro Moro"; (4) "Los Sufrimientos"; (5) "Los Vergelitos"; (6) "El Cuervo El Escribano"; (7) "El Gallo De Sinaloa"; (8) "Por Una Mujer Bonita"; (9) "El Sinaloense"; and (10) "Alfred Quintero". (Id.)

17. The album, *Chalino, El Indio Y Lupillo*, contains the following sound recordings: (1) "Negra Cruz"; (2) "Candido Rodriguez"; (3) "Nomas La Mujeres Quedan"; (4) "Dos Punales"; and (5) "Silverio Monarrez". (Id.)

18. The album, *Al Estilo Norteño*, contains the following sound recordings: (1) "Dos Cruces Negras"; (2) "Aurelio Sanchez"; (3) "Alfredo Y Sotero"; (4) "Lazaro Sanchez"; (5) "Virgen Figueroa"; (6) "Javier Torres"; (7) "Jose Cruz"; (8) "Loncho Barraza"; (9) "Porfirio Beltran"; (10) "Tony Fierro"; (11) "El Indio Sanchez"; and (12) "El Contrabandista". (Id.)

19. The 1992 Agreement covered the sound recordings on the albums *El Gallo De Sinaloa*, *Corridos Villistas*, *Al Estilo Norteño, Chalino*, *El Indio Y Lupillo,* and *En Vivo Desde El Farallon*, and the four sound recordings "Que Me Entierren Cantado", "El Corrido

Del Badiraguato", "Chuyita Beltran", and "El Corrido Del Melon". ("1992 Agreement Works"). (<u>Id.</u>)

20. On January 5, 1993, Rivera and Defendant signed a document entitled "Contract Ratification" stating that Sanchez ratified the 1992 Agreement. (Rivera Decl. ¶ 15; Sanchez Decl. ¶ 23; Trial Exh. 5.) The Contract Ratification also set forth an additional agreement by Rivera to pay royalties to Defendant once Defendant signed with another record label. (<u>Id.</u>)

21. The Contract Ratification did not grant Plaintiffs any additional rights in Chalino's sound recordings.

22. Sometime in early 1992, plaintiff Rivera and Abel Orozco of Linda Records signed a document entitled "Producer Purchase and Sale Agreement" ("Purchase Agreement"). (Rivera Decl. ¶ 12; Trial Exh~~s~~. 101~~, 243~~.)

23. The album, *Hermosisimo Lucero*, contains the following sound recordings: (1) "Hermosismo Lucero"; (2) "Baraja De Oro"; (3) "Quisera Ser Pajarillo"; (4) "Cuentame Tus Penas"; (5) "Rigo Campos"; (6) "Barquito De Siete Velas"; (7) "Lucero Negro"; (8) "Pescadores De Ensenada"; (9) "Ramiro Sierra"; and (10) "Eleodoro Elenes". (Rivera Decl. ¶ 13.)

24. The album *Las Ultimas Grabaciones* contains the following sound recordings: (1) "Hermanos Quintana"; (2) "Agustin Nava"; (3) "Osca Barraza"; (4) "Jose Silva Sanchez"; and (5) "Valentin Felix". (<u>Id.</u>)

25. Under the Purchase Agreement, plaintiff Rivera acquired rights in the fifteen sound recordings released on the albums *Hermosisimo Lucero* and *Las Ultimas Grabaciones* ("Purchase Agreement Works").[2/] (<u>Id.</u>)

---

[2/] The 1989 Agreement Works, 1992 Agreement Works and Purchase Agreement Works are collectively referred to in this Order as "Works." The 1989 Agreement, 1992 Agreement and Purchase Agreement are collectively referred to as "Agreements."

26. Chalino recorded the Purchase Agreement Works pursuant to an agreement granting the rights in those sound recordings to Abel Orozco of Linda Records, dated January 3, 1992.[3/] (Rivera Decl. ¶ 13; Trial Exh. 101A.)

27. On October 1, 2019, Defendant's counsel sent Plaintiffs a cease and desist letter. (Trial Exh. 6; Rivera Decl. ¶ 17; Sanchez Decl. ¶ 32.)

28. On October 18, 2019, Plaintiffs sent a response to Defendant with a list of the sound recordings owned by Plaintiffs pursuant to the 1989 Agreement and 1992 Agreement. (Rivera Decl. ¶ 17; Trial Exh. 202.)[4/]

29. On June 6, 2022, Defendant sent Plaintiffs Notice of Termination purporting to terminate Plaintiffs' rights in all of the Works as of December 31, 2024, listing August 15, 1989 as the grant date. (Rivera Decl. ¶ 18; Sanchez Decl. ¶ 29; Trial Exh. 10.)

30. On August 2, 2022, Plaintiffs' counsel sent Defendant a letter in response to Defendant's June 6, 2022 Notice, denying the enforceability and effectiveness of the Notice of Termination. (Rivera Decl. ¶ 18; Sanchez Decl. ¶ 29; Trial Exh. 113.)

31. On September 30, 2022, Defendant commenced the action entitled Maricela Vallejo de Sanchez v. Pedro Rivera, et al., CV 22-06795 PA (AGRx), seeking damages for alleged infringement of Sanchez's claimed rights in the sound recordings subject to the 1989 and 1992 Agreements, and a determination from the Court regarding her termination rights.

32. On November 1, 2023, Plaintiffs and Defendant executed a document entitled "Settlement Agreement and Mutual Release of Claims", which had the effect of dismissing the action entitled Maricela Vallejo de Sanchez v. Pedro Rivera, et al., CV 22-6795 PA (AGRx). (Trial Exh. 9.)

---

[3/] While the Purchase Agreement refers to an execution date of January 2, 1992, one of the signatories, Abel Orozco of Linda Records, appears to have signed the agreement on January 3, 1992. (Trial Exh. 101A.)

[4/] This list does not include the sound recordings "Homenaje Del Polle" or "Inez Calderon".

33. In the parties' settlement agreement, Plaintiffs agreed to "consent to, and not at any point in the future dispute as a factual matter, the grant or release date of all the works" subject to the 1989 and 1992 Agreements. Plaintiffs also agreed that the Notice of Termination regarding the 1989 Agreement Works was timely, and did not need to be served again, and also that they would not dispute the termination notice sent regarding the album *El Gallo de Sinaloa*. (Id.)

34. On November 17, 2023, Defendant sent a Notice of Termination purporting to terminate Plaintiffs' rights as of December 31, 2025 in the album *El Gallo De Sinaloa*. (Rivera Decl. ¶ 21; Sanchez Decl. ¶ 29; Trial Exh. 11.) The Notice of Termination references a grant date of May 7, 1992. (Trial Exh. 11.)

35. On October 15, 2024, Defendant sent a Notice of Termination purporting to terminate Plaintiffs' rights as of December 31, 2026 in the album *Corridos Villistas*. (Rivera Decl. ¶ 21; Sanchez Decl. ¶ 29; Trial Exh. 12.) The Notice of Termination references a grant date of May 7, 1992. (Trial Exh. 12.)

36. On December 10, 2024, Defendant sent a Notice of Termination purporting to terminate Plaintiffs' rights as of December 31, 2026 in the album *Al Estilo Norteño*. (Rivera Decl. ¶ 21; Sanchez Decl. ¶ 29; Trial Exh. 114.) The Notice of Termination references a grant date of May 7, 1992. (Trial Exh. 114.)

37. On February 24, 2025, Defendant sent Notices of Termination purporting to terminate Plaintiffs' rights in the remaining 1992 Agreement and Purchase Agreement Works – the albums *Chalino, El Indio Y Lupillo* and *En Vivo Desde El Farallon,* and the sound recordings "El Corrido Del Melon," "Chuyita Beltran," "Que Me Entierren En Cantado," and "El Corrido De Badiraguato," and the albums *Hermosisimo Lucero* and *Las Ultimas Grabaciones* – as of December 31, 2027. (Rivera Decl. ¶ 21; Sanchez Decl. ¶ 29; Trial Exh. 115.) The Notices of Termination all reference a grant date of May 7, 1992. (Trial Exh. 115.)

38. The Notice of Termination for the *Hermosisimo Lucero* album also references as the grant date "the alleged undated grants from Abel Orozco-Linda Records." (Trial Exh. 115-13 & 15.)

39. None of the Agreements contain provisions that expressly convey or mention a right of publication for the Works. (See Trial Exhs. 3, 4, 101A, 102.) The Agreements convey ownership or commercial exploitation rights in the identified sound recordings but do not expressly grant publication rights or otherwise indicate that publication was a separately bargained-for contractual right.

40. Although certain of the Works were published before execution of the Agreements, none of the Agreements expressly granted publication rights. Accordingly, the Court finds that each Agreement is governed by the thirty-five-year termination provision measured from the execution of the grant under 17 U.S.C. § 203(a)(3), rather than the alternative forty-year publication provision.

41. There was no evidence that Chalino created any of the Works as an employee or independent contractor of Cintas or Linda Records, or that Chalino created any of the Works under a written work for hire agreement. The Court finds the testimony of Pedro Rivera and Maricela Vallejo de Sanchez credible except where inconsistent with contemporaneous documentary evidence, and where conflicts exist, the Court afforded greater weight to the contemporaneous written Agreements and business records.

## II. Conclusions of Law

1. Sections 203 and 304 of the Copyright Act govern the termination of copyright grants. 17 U.S.C. § 203 applies to grants and transfers made after 1978, and 17 U.S.C. § 304(c) covers grants before 1978. These termination provisions were enacted to "safeguard authors against unremunerative transfers and improve the bargaining position of the authors by giving them a chance to negotiate more advantageous grants in their works after the works had been sufficiently exploited to determine their value." Milne ex rel. Coyne v. Stephen Slesinger, Inc., 430 F.3d 1036, 1046 (9th Cir. 2005) (quoting H.R. Rep. No. 94-1476, at 124). Section 203, which applies in this case, accords "statutory heirs the

ability to terminate prior grants and recapture copyright ownership for works that were not made for hire." Ray Charles Foundation v. Robinson, 795 F.3d 1109, 1122 (9th Cir. 2015) (citing 17 U.S.C. §§ 203, 304(c)).

2. Under 17 U.S.C. § 203, a termination right can be exercised during a five-year period "beginning at the end of thirty-five years from the date of execution of the grant," but if the grant "covers the right of publication of the work," that five-year period begins at the earlier of (1) thirty-five years from the work's publication or (2) forty years from the execution of the grant, whichever term ends earlier. Id. § 203(a)(3). Termination "may be effected notwithstanding any agreement to the contrary." Id. § 203(a)(5).

3. Termination under section 203 is available for grants ''executed by the author on or after January 1, 1978.'' 17 U.S.C. § 203(a). Where the author is dead, termination may be effected by his heir as set forth in the statute. Id. § 203(a)(1), (2). A termination notice may be served between two and ten years before the termination date. Id. § 203(a)(4)(A). The notice must ''state the effective date of the termination,'' be recorded in the Copyright Office ''as a condition to its taking effect,'' and comply with various other formalities prescribed by regulation. Id. § 203(a)(4); see 37 C.F.R. § 201.10. The filing or recordation of the notice can take place at any time prior to the expiration of the effective date of termination. Id. § 203(a)(4)(A).

4. Termination rights follow the work, and not the chain of title; a later purchaser cannot obtain better rights than the original grantee. Thus, if an artist executes the original grant, any successor takes the rights to those works subject to the same termination period as the original grantee. See 17 U.S.C. §§ 203, 304(c)-(d); 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright §§ 11.02[4][b].

5. Another purpose of the termination provision in section 203 is to provide the grantee "reasonable notice what rights of theirs are being affected through the exercise of the authors' (or heirs') termination right." Siegel v. Warner Bros. Ent. Inc., 690 F. Supp. 2d 1048, 1056 (C.D. Cal. 2009). The two-year minimum notice provision gives grantees "a

reasonable chance to identify the grant and work at stake" which "must be balanced against ensuring . . . the opportunity for authors or their heirs to actually share in the new right." Id.

6. "Harmless errors" in a notice of termination that do not "materially affect the adequacy of the information required to serve the purposes" of the termination provisions of the Copyright Act "shall not render the notice invalid." 37 C.F.R. § 201.10(e)(1); see also Siegel, 690 F. Supp. at 1052 ("[A]n error's materiality and hence its harmlessness, [is] to be viewed through the prism of the information needed to adequately advance the purpose sought by the statutory termination provisions themselves.")

7. There are three grants conveying rights to Plaintiffs in Chalino's original sound recordings. All of the grants were executed after January 1, 1978, and thus subject to the termination provisions discussed above. As Chalino's heir, Defendant is entitled to exercise her termination rights under 17 U.S.C. § 203 as to the rights granted by Chalino to Plaintiffs and to Abel Orozco/Linda Records pursuant to the Agreements.

8. The first grant was executed on August 15, 1989; the second grant was executed on May 7, 1992; and the third grant, from Abel Orozco/Linda Records to Rivera, is based on the original grant date of January 3, 1992 (the date of the agreement between Chalino and Abel Orozco/Linda Records).

9. None of these three grants expressly provide for a right of publication for any of the Works. Accordingly, the Court concludes that for each Agreement, the grant date governs the applicable termination window. See 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 11.05 (2026) ("normal [35-year] termination window" should apply "except in the case of grants that specifically call out the right of publication of the work"; "alternative [40-year] measure measured from publication was intended to be triggered only by a grant of what is referred to in industry usage as 'publication rights,' which are limited to book and periodical publication"); Baldwin v. EMI Feist Catalog, Inc., 805 F.3d 18, 33 (2d Cir. 2015) (applying 35-year window to termination of rights in a song because "publication is a one-time event" that occurs "when the work is first sold or otherwise distributed to the public"); H.R. Rep. No. 94-1476, at 126 (providing book publication

contract as the example for when a 40 year termination window would apply). Because the Agreements do not expressly transfer publication rights, the Court concludes that the alternative forty-year termination provision of § 203(a)(3) does not apply.

10. The termination window for the 1989 Agreement Works begins on August 15, 2024, and closes on August 15, 2029.

11. The termination window for the 1992 Agreement Works begins on May 7, 2027, and closes on May 7, 2032.

12. The termination window for the Purchase Agreement Works begins on January 3, 2027, and closes on January 3, 2032.

13. None of the Works at issue in this case were works made for hire under 17 U.S.C. § 101.

14. To the extent that a Notice of Termination has not been recorded, a notice of termination may be filed with the Copyright Office at any time prior to the effective date of termination. 17 U.S.C. § 203(a)(4)(A). Accordingly, an unrecorded Notice of Termination that specifies an effective date that has not yet passed is not invalid. Recordation is a statutory condition to the effectiveness of termination, but is not a prerequisite to the facial validity of a notice whose effective date has not yet occurred.

15. The June 6, 2022 Notice of Termination for the 1989 Agreement Works (Trial Exh. 10) was served within the applicable service window, with an effective termination date (December 31, 2024) inside the applicable termination window (August 15, 2024 through August 15, 2029), and filed with the Copyright Office. (Trial Exh. 247.) This Notice is valid, and Plaintiffs' rights in the 1989 Agreement Works were terminated as of December 31, 2024. All rights granted to Plaintiffs pursuant to the 1989 Agreement reverted to Defendant as of the effective date.

16. The Court concludes that the November 17, 2023 Notice of Termination for the album *El Gallo De Sinaloa* (Trial Exh. 11), is valid based on prior agreement of the parties not to dispute the Notice of Termination sent regarding this album. (Trial Exh. 9.) Accordingly, pursuant to the parties' agreement, Plaintiffs' rights in the 1992 Agreement

Works on the album *El Gallo De Sinaloa* were terminated as of December 31, 2025. All rights to the album *El Gallo De Sinaloa* granted to Plaintiffs pursuant to the 1992 Agreement reverted to Defendant as of the effective date.

17. No declaration is made concerning the songs "Homenaje Del Polle" or "Inez Calderon," because those recordings are not at issue in this action.

18. The October 15, 2024 Notice of Termination for the album *Corridos Villistas*, subject to the 1992 Agreement (Trial Exh. 12), references an effective termination date (December 31, 2026) outside the applicable termination window (May 7, 2027 through May 7, 2032). Defendant may serve a new notice specifying an effective termination date within the applicable termination window.

19. The December 10, 2024 Notice of Termination for the album *Al Estilo Norteño*, subject to the 1992 Agreement (Trial Exh. 114), references an effective termination date (December 31, 2026) outside the applicable termination window (May 7, 2027 through May 7, 2032). Defendant may serve a new notice specifying an effective termination date within the applicable termination window.

20. The February 24, 2025 Notices of Termination for the albums *Chalino, El Indio Y Lupillo* (Trial Exhs. 115-7 & 23), *En Vivo Desde El Farallon* (Trial Exhs. 115-9 & 25), and the sound recordings "El Corrido Del Melon" (Trial Exhs. 115-1 & 17), "Chuyita Beltran" (Trial Exhs. 115-3 & 19), "Que Me Entierren En Cantado" and "El Corrido De Badiraguato" (Trial Exhs. 115-5 & 21), subject to the 1992 Agreement, were served within the applicable service window, and reference an effective termination date (December 31, 2027) inside the applicable termination window (May 7, 2027 through May 7, 2032). These Notices are valid, and Plaintiffs' rights in these sound recordings are terminated effective December 31, 2027. All rights granted to Plaintiffs pursuant to the 1992 Agreement revert to Defendant as of the effective date.

21. The February 24, 2025 Notice of Termination for the album *Las Ultimas Grabaciones* (Trial Exhs. 115-11 & 27), subject to the Purchase Agreement with a grant date of January 3, 1992, references an incorrect grant date of May 7, 1992. The February 24,

2025 Notice of Termination for the album Las Ultimas Grabaciones (Trial Exhs. 115-11 & 27), subject to the Purchase Agreement, references an incorrect grant date of May 7, 1992, rather than the applicable grant date of January 3, 1992. Accordingly, the Notice is invalid and ineffective to terminate Plaintiffs' rights. The applicable termination window is January 3, 2027 through January 3, 2032. Defendant may serve a new notice complying with 17 U.S.C. § 203 providing for an effective termination date within that statutory window, upon which the rights granted pursuant to the Purchase Agreement will revert to Defendant.

22. The February 24, 2025 Notice of Termination for the album *Hermosisimo Lucero* (Trial Exhs. 115-13 & 15), subject to the Purchase Agreement, references an incorrect grant date of May 7, 1992, but also refers to "the alleged undated grants from Abel Orozco-Linda Records," with an effective termination date (December 31, 2027) inside the applicable termination window (January 3, 2027 through January 3, 2032). The Court concludes that the reference to the incorrect grant date was a harmless error under 17 U.S.C. § 203(e), because the additional reference to the Abel Orozco-Linda Records grant provided sufficient notice to Plaintiffs of the applicable grant date, and the incorrect information "did not materially affect the adequacy of the information required to serve the purposes of 17 U.S.C. § 203." 17 U.S.C. § 203(e); <u>see also</u> <u>Waite v. UMG Recordings, Inc.</u>, 450 F. Supp. 3d 430, 440 (S.D.N.Y. 2020) (applying harmless error doctrine to incorrect or omitted grant dates); <u>Mtume v. Sony Music Entm't</u>, 408 F. Supp. 3d 471, 476 (S.D.N.Y. 2019) (same). Plaintiffs demonstrated no prejudice arising from the erroneous grant date, as they were fully aware of the identity of the works, the operative agreements, and the termination rights asserted. Accordingly, the Court concludes that this Notice is valid, and Plaintiffs' rights in the sound recordings on the album are terminated effective December 31, 2027. All rights granted to Plaintiffs pursuant to the Purchase Agreement and the original grant to Abel Orozco/Linda Records revert to Defendant as of the effective date.

23. A party seeking a permanent injunction must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships

between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, 126 S. Ct. 1837, 1839 (2006). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." Id.

24. Defendant asks this Court for injunctive relief under the Copyright Act, 17 U.S.C. § 502. Section 502 authorizes the grant of permanent injunctions to prevent or restrain infringement. However, Defendant's counterclaim does not allege a claim for copyright infringement. Nor does Defendant's claim for declaratory relief seek a determination of infringement. Accordingly, Defendant fails to meet her burden of showing that she is entitled to injunctive relief, and the Court exercises its discretion against awarding injunctive relief at this time.

25. The Court determines that Defendant is the prevailing party, and awards Defendant her costs of suit. See Fed. R. Civ. P. 54(d)(1). Defendant obtained substantially all of the declaratory relief sought regarding the validity and enforceability of the termination notices, and therefore qualifies as the prevailing party under Rule 54(d)(1).

26. The Court concludes that Plaintiffs are entitled to declaratory relief only with respect to the Notices of Termination declared invalid herein. Defendant is entitled to declaratory relief with respect to the Notices declared valid herein and the resulting termination and reversion of rights.

27. The Court will issue a Judgment consistent with these Findings of Fact and Conclusions of Law.

IT IS SO ORDERED.

DATED: August 11, 2026

Percy Anderson
UNITED STATES DISTRICT JUDGE